UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NUMBER: _____

HARRY SHECHTER,

     PLAINTIFF

     vs.

MARKEL      AMERICAN      INSURANCE
COMPANY,

     DEFENDANT.

........................................................................................

## PETITION FOR DECLARATORY JUDGMENT
## & COMPLAINT FOR MONETARY DAMAGES

PLAINTIFF, HARRY SHECHTER, files this, his Petition for Declaratory Judgment and Complaint for Monetary Damages against the DEFENDANT, MARKEL AMERICAN INSURANCE COMPANY (hereinafter "MARKEL"), and as grounds therefore, states as follows:

1.      This case arises out of a dispute between the parties surrounding coverages and damages stemming from an insurance policy that insures a boat.  Thus, pursuant to 28 U.S.C. § 1333(1), this Court has original jurisdiction over the subject matter as admiralty and maritime jurisdiction extends to cases involving marine insurance contracts.

2.      This action is also brought pursuant to the Declaratory Judgment Act.  Pursuant to 28 U.S.C. § 2201(a), "in a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  Thus, this Court has jurisdiction to declare the rights and obligations conferred upon the parties by the insurance

policy at issue.

      3.      HARRY SHECHTER owns real property, resides and is domiciled in Miami-Dade County Florida, and is otherwise *siu juris.*

      4.      MARKEL is authorized by Florida's Department of Financial Services – Florida Office of Insurance Regulation, and does conduct insurance business in Miami-Dade County, Florida.  MARKEL'S principal place of business and home office is located in Glen Allen, Virginia.

      5.      Because HARRY SHECHTER resides within the Southern District of Florida, and a substantial part of the events giving rise to this lawsuit occurred within the Southern District of Florida, venue is proper.

      6.      MARKEL issued HARRY SHECHTER an insurance policy entitled "The Markel Boat Policy," which bears Policy Number MSB00000128804 (hereinafter the "Policy").  The Policy was delivered to HARRY SHECHTER in Miami, Florida and insured his 2003 Pro Sports Boat (hereinafter the "BOAT").  HARRY SHECHTER is not in possession of the Policy, but MARKEL is. Thus, a declarations page and specimen copy of the Policy is attached as Composite Exhibit "A". Once a complete copy is obtained during discovery, the record will be supplemented accordingly.

      7.      The Policy contains a choice of law provision, which also requires the Policy to conform to Florida law.  The Policy provides in relevant part:

> Conformity to Statute
>
> This policy is subject to established principles and precedents of federal admiralty law of the United States of America, but where no substantive principle or precedent is applicable state law shall apply.  Any provision of this policy that conflicts with applicable law or regulation is hereby amended to conform to the minimum requirements of the law or regulation.

8.      On June 25, 2017, after several days of recurring thunderstorms and during the effective dates of coverage, the Boat sank while it was securely docked in Key Largo, Florida (hereinafter the "Loss").  This caused "sudden accidental direct physical loss or damage," to the Boat.  Thus, the policy provided coverage for the Loss.

9.      Nevertheless, MARKEL denied the claim and has refused to indemnify HARRY SHECHTER for the damages sustained to his Boat.   MARKEL sent HARRY SHECHTER correspondence, dated August 14, 2017, that informed him that MARKEL did not believe the Loss was covered by the Policy.  In support of its position, MARKEL referenced three provisions of the Policy and claimed that the fuel tanks leaked into the bilge and caused the bilge pumps to malfunction.

10.     MARKEL claims that given the conditions found upon the Boat during its inspection, two, non-descript, warranties of seaworthiness were breached (which voided the policy from its inception) and the Policy's exclusions for "1) wear and tear, gradual deterioration, inherent vice, marring, electrolysis, corrosion, rust, dampness of atmosphere, weathering osmosis, blistering, mold, mildew, wet or dry rot; 4) failure to maintain the insured watercraft (including its machinery and equipment) in good condition so that the insured watercraft cannot be damaged by ordinary weather or water conditions or rigors of normal use," serve to exclude or otherwise prohibit coverage.

11.     All conditions precedent to filing this action have been satisfied, or have otherwise been waived.

12.     As a result of the aforementioned, HARRY SHECHTER has been forced to retain undersigned counsel in order to obtain a declaratory judgment and recover policy benefits due and owed.  Thus, and pursuant to Florida Statutes § 627.428, MARKEL is liable for any attorney's

fees and costs incurred as a result of bringing this action.

## Count I – Petition for Declaratory Judgment
## Applicability of Policy Provisions

HARRY SHECHTER re-incorporates and re-alleges the allegations contained within Paragraphs One (1) through Twelve (12) as if fully set forth within.

13.     There exists a bona fide, actual, present practical need for a declaration. MARKEL claimed that the loss is not covered because (i) common law concepts of maritime and admiralty law surrounding the seaworthiness of the Boat prohibit coverage, and (ii) two express exclusionary provisions within the Policy prohibit coverage.

14.     A review of the correspondence from MARKEL that informs HARRY SHECHTER that coverage does not exist appears to be conclusory, and ultimately begs the question as to why the Boat sank in the first place. MARKEL's position rests upon mere speculation and supposition as to conditions that might or might not have existed, even though the Policy appears to place the burden of proof upon MARKEL to prove coverage does not exist.

15.     The following policy provision suggests that the Policy issued by MARKEL is akin to what is commonly referred to as a 'all risk' policy:

**Physical Damage**
    1.  Coverage
        a.  Watercraft and Equipment
            i.  Coverage
                We will cover sudden accidental direct physical loss or damage to the insured watercraft.

16.     Notwithstanding, MARKEL references two principles of the "seaworthiness" of the Boat without referencing the Policy, and when it specifically referenced Policy provisions, it reached the conclusion that since the Boat sank, it must have been for the reasons which are

more thoroughly referenced in Paragraph 10 of this action.

17.     HARRY SHECHTER is in doubt as to his rights under the Policy. Specifically, the only reference the Policy has with regard to the seaworthiness of the Boat is when the Policy was originally placed. Additionally, it also appears that when MARKEL made its determination, MARKEL placed the burden of proof upon HARRY SHECHTER to disprove all exclusions within the Policy.

18.     All antagonistic and adverse interests are before the Court. Moreover, the relief sought in this lawsuit is not merely seeking legal advice by the Court or to answer questions propounded from curiosity. HARRY SHECHTER is in doubt as to his rights and obligations as set forth within the Policy.

WHEREFORE, HARRY SHECHTER respectfully requests this Honorable Court to enter judgment as follows:

i.      Common law concepts of seaworthiness do not apply to prohibit or bar coverage for the Loss;

ii.     The Policy's warranty that the insured watercraft is seaworthy at the inception of this insurance agreement does not prohibit or bar coverage for the Loss;

iii.    Subsection (1) of the "iv. Exclusions" provision of the Policy does not apply to prohibit or bar coverage for the Loss;

iv.     Subsection (4) of the "iv. Exclusions" provision of the Policy does not apply to prohibit or bar coverage for the Loss;

v.      Pursuant to FLORIDA STATUTES § 627.428 award attorney's fees and costs against MARKEL and in favor of HARRY SHECHTER, and

vi.     Further relief this Court deems just and proper.

## COUNT II – BREACH OF CONTRACT

HARRY SHECHTER re-incorporates and re-alleges the allegations contained within Paragraphs One (1) through Twelve (12) as if fully set forth within.

19.     The Policy places an obligation upon MARKEL to indemnify HARRY SHECHTER

for, "sudden accidental direct physical loss or damage to the insured watercraft." Thus, when the boat sank, MARKEL was duty bound to pay for all damages.

20.     Instead of satisfying its obligations under the Policy, MARKEL denied the claim and took the position that it was not required to pay any Policy proceeds under the circumstances.  To date, MARKEL has not indemnified or tender any money to HARRY SHECHTER. This is a material breach of the Policy.

21.     As a direct and proximate result of MARKEL'S breach, HARRY SHECHTER has been damaged.

WHEREFORE, HARRY SHECHTER respectfully requests this Honorable Court to enter judgment as follows:

    i.     MARKEL BREACHED THE POLICY;
    ii.    MARKEL'S BREACH WAS MATERIAL;
    iii.   HARRY SHECHTER is entitled to recovery his damages;
    iv.    Pursuant to FLORIDA STATUTES § 627.428 award attorney's fees and costs against MARKEL and in favor of HARRY SHECHTER, and
    v.     Further relief this Court deems just and proper.

### Count III – Petition for Declaratory Judgment
### Remedy regarding Seaworthiness (Alternative to Breach of Contract)

22.     HARRY SHECHTER re-incorporates and re-alleges the allegations contained within Paragraphs One (1) through Twelve (12) as if fully set forth within.

23.     There exists a bona fide, actual, present practical need for a declaration. MARKEL'S denial letter unequivocally relies upon concepts of the warranty of seaworthiness. "For these reasons, MARKEL denies coverage to you based on unseaworthiness of the vessel all for the reasons outlined above."

24.     The warranty of seaworthiness appears in the Policy's "Insuring Agreement,"

provisions, and it is not an exclusion to an otherwise covered claim:

INSURING AGREEMENT

In return for the premium payment and compliance with all applicable provisions of this policy and any endorsements, we agree to provide the insurance coverages as shown on the Declarations Page, which is part of this policy.

By accepting this policy, you agree that the statements on the Declarations Page and any application are your agreements and representations. This policy is issued in reliance upon the truth of your representations during the application process and it includes all agreements existing between you and us or any of our representatives.

It is warranted that the **insured watercraft** is seaworthy at the inception of this insuring agreement. Violation of this warranty voids this insuring agreement from its inception.

25. The Policy also requires MARKEL to return all unearned premiums if the Policy is cancelled:

5. Return Premium

If this policy is cancelled, you may be entitled to a premium refund. If we cancel the policy, any return premium will be computed on a pro-rata basis. If you cancel the policy, any return premium will be computed on a 90% pro-rata basis. The return premium cancellation is subject to our minimum earned premium. Any return premium will be paid to you within a reasonable amount of time after the cancellation.

26. MARKEL denied the claim because it believes that the Boat was unseaworthy. The only provision of the Policy that address the concept of seaworthiness is referenced above. That provision makes it clear that MARKEL'S only available remedy for any breach of the warranty of seaworthiness is to void the Policy from its inception.

27. Under common law, Florida Statutes § 627.7282 and the Policy's "Return Premium" provision, MARKEL is required to return any unearned premium HARRY SHECHTER. To date, MARKEL has not done so.

28. HARRY SHECHTER is in doubt as to his rights under the Policy. If it is found that

he was in violation of the warranty of seaworthiness provision, he is in doubt as to his rights to recover all unearned premiums he paid since the inception of the Policy.

29.     All antagonistic and adverse interests are before the Court.  Moreover, the relief sought in this lawsuit is not merely seeking legal advice by the Court or to answer questions propounded from curiosity.  HARRY SHECHTER is in doubt as to his rights and obligations as set forth within the Policy.

WHEREFORE, HARRY SHECHTER respectfully requests this Honorable Court to enter judgment as follows:

i. The only available remedy to MARKEL for any violation of the warranty of seaworthiness is to void the Policy from its inception;

ii. If it is found that HARRY SHECHTER violated the warranty of seaworthiness, then MARKEL must return all premiums paid since the inception of the Policy;

iii. Pursuant to FLORIDA STATUTES § 627.428 award attorney's fees and costs against MARKEL and in favor of HARRY SHECHTER, and;

iv. Further relief this Court deems just and proper.

### TRIAL BY JURY

HARRY SHECHTER demands a trial by jury on all issues so triable.

Respectfully submitted,

MASE TINELLI, P.A.
*Attorneys for Plaintiff*
2601 S. Bayshore Drive, Suite 800
Miami, Florida 33133
Telephone:  (305) 377-3770
Facsimile: (305) 377-0080

By:     */s/ Anthony Tinelli*
       **ANTHONY J. TINELLI**
       Florida Bar Number 959901
       atinelli@masetinelli.com
       jthompson@maselaw.com
       filing@masetinelli.com

GABRIEL J. FERNANDEZ
Florida Bar Number 92374
gfernandez@masetinelli.com
filing@masetinelli.com

# Composite Exhibit "A"



11/30/2016


ANDREW HESSER
9157 SW 130 LN
C/O HARRY SHECHTER
9157 SW 130 LN
Miami, FL 33176


Hi ANDREW:

Thank you for choosing Markel, the watercraft insurance expert.  We're pleased to have you as a customer.  Rest assured, we know how much your watercraft means to you.  For now, please take a moment to review the enclosed policy documents to make sure everything is correct.  If something doesn't seem right or if you need additional help, call your agent reflected on the Declarations page.

If you want to make a payment by phone, please call your agent or to make a payment online, please visit **markelamerican.com/pay**.

And thanks again for letting us protect you and your watercraft.

Happy Boating!


**Markel American Insurance Company**
Specialty Insurance by Real Specialists

## PRIVACY POLICY

We would like to thank you for your business and let you know we respect your privacy.  We are committed to protecting your personal information.  Please read this notice, which outlines our privacy policies and practices.

We collect nonpublic information about you from the following sources:
- Information we receive from you on applications or other forms such as your name and address;
- Information about your transactions with us, our affiliates, or others;
- Information we receive from a consumer reporting agency.

**We do not disclose any nonpublic information about our customers or former customers to anyone, except as permitted by law.**

We may disclose nonpublic personal information about you to the following types of third parties:
- Insurance agents and/or brokers that you have chosen to work with;
- Non-affiliated third parties as permitted by law to provide services you have requested.

We restrict access to nonpublic personal information about you to those employees who need to know that information to provide services to you.  We maintain physical, electronic, and procedural safeguards that comply with federal standards to guard your nonpublic personal information.

# MARKEL AMERICAN INSURANCE COMPANY

## GLEN ALLEN, VIRGINIA

**MARKEL**

### WATERCRAFT DECLARATIONS PAGE

Page 1 of 1

| Policy Number: | Agency Number: | Effective Date/Transaction: |
|---|---|---|
| MSB00000128804 | 10216 - 000001 | 11/16/2016    Reissue |

| Policy Period: From  11/16/2016    To  11/16/2017 | 12:01 A.M. Standard Time at Your Mailing Address |
|---|---|

| Insured Name and Mailing Address | Your Agent    800-879-2248 |
|---|---|
| ANDREW HESSER<br>HARRY R SHECHTER<br>C/O HARRY SHECHTER<br>9157 SW 130 LN<br>Miami, FL 33176 | ARTHUR J GALLAGHER RISK MNGT SRVCS INC<br>3455 E Paris Ave SE<br>Grand Rapids, MI 49512 |

**Unit Description:**  22 '2003 PRO SPORTS    230  HP  HIN:WJIX0177J203

**Unit Mooring Location:**  Key Largo, FL 33037

**Navigation Limits:**  Navigation is extended to no more than 25 miles offshore.

**Named Operators:**

| COVERAGE | LIMIT | ELECTED DEDUCTIBLE | PREMIUM |
|---|---|---|---|
| Watercraft & Equipment, Agreed Value | $25,000 | $500 | $732 |
| Diminishing Deductible:  $0 | | | |
| Watercraft Liability | $500,000 | $0 | $80 |
| Fishing Equipment | $2,000 | $250 | $24 |
| Medical Payments | $5,000 | $0 | $8 |
| Personal Effects | $1,000 | $250 | incl. |
| Oil Pollution Liability | $854,400 | | incl. |
| Emergency Towing and Assist | $500 | $0 | incl. |
| Uninsured Watercraft | $500,000 | $0 | incl. |
| | | | $0.00 |
| | | **Unit Premium:** | **$844.00** |

**Minimum Earned Premium:** $0.00    **Policy Taxes/Fees:** $0.00    **TOTAL ANNUAL PREMIUM:** $844.00

Policy Correction
CORRECT NAMED INSURED SPELLING

| Loss Payee | Additional Insured |
|---|---|
| | |

**Producer**

**Forms and Endorsements:**    MAM5001-0407    MAM5012-0407    MAM5014-0407    MAM5017-0407    MAM5120-0407
MAM5136-0407    MAM5053-0508    MAM5055-0610    MAM5058-0413    MAM5011-0410

**Signed on:**  2016-11-29    **at**  Grand Rapids, MI    *Bruce A. Key*



**MARKEL AMERICAN INSURANCE COMPANY**

**THE MARKEL BOAT POLICY**

TABLE OF CONTENTS

## THE MARKEL BOAT POLICY

READ YOUR POLICY CAREFULLY.

**Beginning on Page**

**INSURING AGREEMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**DEFINITIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**GENERAL CONDITIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**GENERAL EXCLUSIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**PHYSICAL DAMAGE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**WATERCRAFT LIABILITY** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**OIL POLLUTION LIABILITY** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**MEDICAL PAYMENTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**UNINSURED WATERCRAFT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## INSURING AGREEMENT

In return for the premium payment and compliance with all applicable provisions of this policy and any endorsements, we agree to provide the insurance coverages as shown on the Declarations Page, which is part of this policy.

By accepting this policy, you agree that the statements on the Declarations Page and any application are your agreements and representations.  This policy is issued in reliance upon the truth of your representations during the application process and it includes all agreements existing between you and us or any of our representatives.

It is warranted that the **insured watercraft** is seaworthy at the inception of this insuring agreement. Violation of this warranty voids this insuring agreement from its inception.

## DEFINITIONS

Throughout this policy most words and phrases that have special meanings appear in **bold**.  Only the pronouns "we", "our", "us", "you" and "your" are defined but do not appear in **bold**. This section defines some of the more general terms used in this policy.  Bold terms that are not listed in this section are defined within the sections they appear.

1.  You and your refer to the 'Insured' named on the Declarations Page and your spouse if a **resident** of the same household.

2.  The words we, us, and our, refer to the company, shown on the Declarations Page, which is providing this insurance.

3.  **Actual cash value** means the cost to repair or replace the lost or damaged property less depreciation.

4.  **Bodily injury** means physical injury, sickness or disease sustained by a person including death resulting from any of these.

5.  **Constructive total loss** means that the cost to recover and/or repair the **insured watercraft** will exceed the applicable limit of insurance.

6.  **Contaminant** means any petroleum product, chemical, lubricant, or solvent normally associated with the use and operation of a watercraft.

7.  **Design defect** means a flaw in the structural plan of the **insured watercraft's** hull or machinery, or any of its components. Design defect does not include wear and tear, gradual deterioration, corrosion, rust, electrolysis, osmosis, weathering, **latent defects**, or **manufacturer's defects**.

8.  **Family member** means any person related to you by blood, marriage, or adoption (including a ward or foster child) who is also a **resident** of your household.

9.  **Insured** means you and any person, firm, corporation or legal entity that may be operating the **insured watercraft** with your prior permission. However, this does not include a paid captain or any paid crew member of the **insured watercraft**. Nor does it include any person, firm, corporation or other legal entity or any of their agents or employees operating a shipyard, boat repair facility, marina, yacht club, sales agency, chartering agency, yacht broker, boat service station, salvor, towing service or similar organization.

10. **Insured watercraft** means: (a) the watercraft and motor(s) shown on the Declarations Page, including spars, sails, machinery and equipment necessary for the safe operation and maintenance of the watercraft; or (b) a **newly acquired watercraft**.

11. **Latent defect** means a flaw in the material of the **insured watercraft's** hull or machinery existing when the **insured watercraft** or its components were built and not discoverable by common means of testing. Latent defect does not include wear and tear, gradual deterioration, corrosion, rust, electrolysis, osmosis, weathering, inherent vice, **manufacturer's defects**, or **design defects**.

12. **Manufacturer's defect** means the improper, incorrect or inadequate manufacturing process of the **insured watercraft's** hull or machinery or any of its components. Manufacturer's defect does not include wear and tear, gradual deterioration, corrosion, rust, electrolysis, osmosis, weathering, inherent vice, **latent defects**, or **design defects**.

13. **Newly acquired watercraft** means any watercraft you acquire during the policy period which is similar to the **insured watercraft**, provided we insure all watercraft owned by you, and you pay any additional premiums due. The limit of insurance applicable to any **newly acquired watercraft** will be its **actual cash value**, but not more than 150% of the highest limit on the Declarations Page for 'Watercraft and Equipment'.

    Coverage as a **newly acquired watercraft** will cease if this policy expires or a period of 30 days has passed since you acquired the watercraft.

14. **Occurrence** means a single event or an accident or series of accidents caused by a single event.

15. **Property damage** means damage to tangible property.

16. **Resident** means any person who lives in your home.

## GENERAL CONDITIONS

1. Use of the **Insured Watercraft**
   If you violate the following conditions, coverage will be suspended until you are no longer in violation:
   a. The **insured watercraft** is for private pleasure use only. Coverage is not provided for charter, hire, lease or any other commercial use. Recreational entertaining of the **insured's** business clients on the **insured watercraft** is not considered commercial use.
   b. The **insured watercraft** may be towed overland on its trailer, provided the weight of the **insured watercraft**, trailer and any other equipment do not exceed the capacity limits as provided by the manufacturer of the towing vehicle. Coverage is not provided anytime the **insured watercraft** is being transported as waterborne cargo.

2. Policy Period/Territory
   This policy only applies to loss which occurs during the policy period as shown on the Declarations Page and:
   a. on land within the United States of America and Canada; or
   b. while the **insured watercraft** is afloat no more than 25 miles offshore within the waters of the Atlantic/Pacific Oceans or the Gulf of Mexico; within inland lakes, rivers and waterways of the continental United States of America, Alaska, Hawaii or Canada; but limited to within the navigation limits shown on the Declarations Page.

3. Misrepresentation or Fraud
   All insurance provided by this policy will be null and void if you, at any time, either intentionally conceal or misrepresent any fact, regardless of materiality, or if you misrepresent or conceal any material fact regardless of intent. No action or inaction by us will be deemed a waiver of this provision.

4. Notice of Cancellation
   You may cancel this policy by returning it to us or our authorized agent, or by advising us or our authorized agent in writing, stating the future date you want the policy to be cancelled.

   We may cancel this policy by delivering or mailing notice of cancellation to the first named 'Insured' at the last address shown in our records at least:
   a. ten (10) days before the cancellation takes effect if:
      i. the cancellation is for nonpayment of premium; or
      ii. this policy has been in effect for less than sixty (60) days and is not a renewal policy.
   b. thirty (30) days before the cancellation takes effect in all other cases.

   After this policy has been in effect for sixty (60) days, or if this is a renewal policy, we will cancel only:
   a. for nonpayment of premium due;
   b. for misrepresentation or fraud;

c.  for substantial breach of your duties under this policy;
d.  if the risk changed substantially since the policy was issued; or
e.  for failure to comply with our underwriting requirements within 60 days of the term effective date.

Proof of mailing of this notice to you will be sufficient proof that notice of cancellation was given. The date of the cancellation stated in the notice will become the end of the policy period.

This policy will terminate without any written notice and all premiums will be deemed fully earned by us when we pay for a total loss or a **constructive total loss**.

5.  Return Premium
If this policy is cancelled, you may be entitled to a premium refund. If we cancel the policy, any return premium will be computed on a pro-rata basis.  If you cancel the policy, any return premium will be computed on a 90% pro-rata basis. The return premium cancellation is subject to our minimum earned premium. Any return premium will be paid to you within a reasonable amount of time after the cancellation.

6.  Conformity to Statute
This policy is subject to established principles and precedents of federal admiralty law of the United States of America, but where no substantive principle or precedent is applicable state law shall apply. Any provision of this policy that conflicts with applicable law or regulation is hereby amended to conform to the minimum requirements of the law or regulation.

7.  Policy Changes
No change or waiver may be effected in this policy except by endorsement issued by us. If a premium adjustment is necessary, we will make the adjustment as of the effective date of the change.

When we broaden coverage during the policy period, without charge, the policy will automatically provide the broadened coverage when effective in your state.

8.  Legal Action Against Us
a.  No suit or action may be brought against us unless there has been full compliance with all terms of this policy.
b.  With respect to coverage provided under **PHYSICAL DAMAGE**, no suit or action may be brought against us unless the action is brought within 12 months after the date you first have knowledge of the loss.
c.  With respect to all other coverage under this policy, no suit or action may be brought against us until the amount of a claim against you has been determined or agreed upon.
d.  Nothing in this policy gives any person or organization the right to join us as defendants in a suit brought against you.

9.  No Benefits to Others
No person or organization, which has custody of the **insured watercraft** and is to be paid for services, will benefit from this insurance.

10.  Transfer of Interest
We do not provide any coverage under this policy if you sell, assign, transfer or pledge the insured property unless prior written consent has been obtained from us.

In the event of your death, this policy will remain in effect until the end of the policy period for:
a.  persons covered under this policy at the time of your death;
b.  your legal representative while acting within the scope of duties of a legal representative; or
c.  any person having proper custody of the **insured watercraft** until a legal representative is appointed.

11.  Right of Recovery
You may have the right to recover from another party who is responsible for your loss. If we pay your loss under this policy, this right of recovery will belong to us up to the amount that we have paid you. If you, or anyone acting on your behalf, take any action that impairs our right to recover, we may consider this policy void and without effect as to such loss. However, signing written contracts for storage or slip rental or registration forms for sailboat races that include a waiver of subrogation provision will not void this policy.

12. Claim or Suit Against You

You must immediately notify us and send us every demand notice, summons or other legal papers received by you or your representative if a claim is made or a suit is brought against you for liability that is covered under this policy. We will pay the ensuing cost of the suit and have the sole right to control the defense of the suit. We also have the option of naming attorneys to represent you in the suit.

13. General Duties Following a Loss

You must report immediately to us or our authorized agent any accident, loss, damage, or expense which may be covered under this policy. This report should give full details about when and where the loss occurred, how it happened and the name and address of all the people involved including all witnesses. You are required to immediately notify the authorities of any collision, theft, vandalism or malicious damage to your insured property or if any injury is involved. You must also permit us to inspect any damage before repairs are made.

After requested by us, you must file within ninety (90) days thereof, with us or our authorized agent, a written statement about the details of the loss. This statement must be signed and sworn by you. You must cooperate with us in the investigation, defense or settlement of any loss and agree to be examined under oath, if we request.

If you do not comply with these general duties, no coverage for the loss will be provided.

14. Other Insurance

This policy is excess over any other valid and collectible insurance.

15. Nonrenewal

If we decide not to renew your policy, we or our authorized representative will mail to the first named 'Insured', at the address shown on the Declarations Page, written notice of nonrenewal. The written notice will be mailed to the first named 'Insured' at least thirty (30) days before the end of the policy term. A copy of the notice will also be sent to any lienholder named on the Declarations Page. If we decide not to renew your policy, our mailing of notice to the address of the first named 'Insured' shown on the Declarations Page will constitute proof of notice as of the date we mail it.

### GENERAL EXCLUSIONS

No coverage is provided under this policy for loss or damage, liabilities incurred by any person, injury or damages or expenses of any type for loss caused by, resulting from or arising out of:

1. Extended Radioactive Contamination
   a. ionizing radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel;
   b. the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof;
   c. any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter;
   d. the radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter. The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purpose.

   However, if while the **insured watercraft** is within the policy territory, a fire arises directly or indirectly from one or more of the above causes in item a., b., and d., then any loss or damage arising directly from that fire will, subject to the provisions of this policy, be covered. No coverage is provided for any loss or damage, liabilities incurred by any person, injury or damages or expenses of any type for loss caused by, resulting from or arising out of nuclear reaction, nuclear radiation, or radioactive contamination arising directly or indirectly from that fire.

2. War or any warlike operation. This includes declared and undeclared wars, civil wars, revolutions or any civil unrest.

3.  The lawful or unlawful capture, seizure, requisition or detainment of your **insured watercraft** by a civil authority or any attempt at any of these.

4.  An actual or threatened act involving a chemical, biological, bio-chemical or electromagnetic weapon, device, agent or material when used in an intentionally hostile manner.

5.  Preparation for or participation in any race, speed, or stunting contest. This does not apply to sailboats.

6.  Willful or intentional misconduct or criminal act on the part of any **insured** or during any illegal activity on the part of any **insured**. This exclusion includes loss, damage, injury or liability occurring while an **insured** is operating the **insured watercraft** with a blood or breath alcohol level equal to or in excess of the legal limit applicable for the operation of motor vehicles in the state where you reside.

## PHYSICAL DAMAGE

1.  Coverage
    a.  Watercraft and Equipment
        i.   Coverage
             We will cover sudden accidental direct physical loss or damage to the **insured watercraft**.

        ii.  Under 'Watercraft and Equipment' Coverage, we do not cover:
             1)  dock boxes, moorings, cradles, lifts, or shore stations;
             2)  items which are covered elsewhere under this policy; or
             3)  fuel.

        iii. What We Pay
             1)  In the event of a total loss or **constructive total loss**, we will pay the limit on the Declarations Page for 'Watercraft and Equipment'.
             2)  In the event of a partial loss, we will pay the lesser of:
                 a)  the reasonable cost of repairs without deduction for depreciation; or
                 b)  the cost to replace the lost or damaged property, with the lesser of:
                     i)   new property of comparable material and quality, used for the same purpose; or
                     ii)  property of like kind, condition, quality and age.

             However, the following items will be paid based upon **actual cash value**: outdrive units and outboards starting with the 6th year from the date of manufacture; machinery inside the watercraft starting with the eleventh year from the date of manufacture; batteries, paint or finishes (including anti-fouling paint); sails, protective covers; upholstery, cushions, carpet or any fabric.

             We pay for repairs that are made in accordance with the manufacturer's specifications or accepted repair practices, including spot repair.

             If the **insured watercraft** was damaged before the loss, we will not pay to repair the prior damage. In the event of a total loss or **constructive total loss**, the amount we will pay will be reduced to the cost that would have been incurred had the prior damage been repaired.

        iv.  Exclusions
             We will not pay for loss, damage or expense caused by or resulting from:
             1)  wear and tear, gradual deterioration, inherent vice, marring, electrolysis, corrosion, rust, dampness of atmosphere, weathering, osmosis, blistering, mold, mildew, wet or dry rot;
             2)  birds, rodents, insects, animals, and marine life; however if any of these results in fire, sinking, dismasting, collision or stranding of the **insured watercraft**, the resulting physical damage will be covered;
             3)  mechanical or electrical breakdown or overheating unless such damage is the result of other loss covered by this policy;
             4)  failure to maintain the **insured watercraft** (including its machinery and equipment) in good condition so that the **insured watercraft** cannot be damaged by ordinary weather or water conditions or the rigors of normal use;

5) the operation of the **insured watercraft** if the horsepower exceeds the manufacturer's recommended safe powering limit;
6) ice and/or freezing;
7) diminution in value; or
8) **manufacturer's defects** or **design defects**. However, if the loss or damage has not resulted from the negligence of any **insured**, this exclusion does not apply to loss, damage or expense directly caused by any **latent defect** in the hull or machinery (excluding the cost and expense of replacing or repairing the latently defective part).

b. Personal Effects
   i. Coverage
     We will cover sudden accidental direct physical loss to your personal effects, and those of your guests, while on board the **insured watercraft** or while being loaded on or unloaded from the **insured watercraft**. Personal effects are items such as sports equipment, clothing and other personal items.

   ii. Under 'Personal Effects' Coverage, we do not cover:
     1) currency, documents or other valuable papers;
     2) jewelry, watches or furs;
     3) china or silver;
     4) antiques or collectibles;
     5) computer hardware or software;
     6) perishables or consumables;
     7) firearms;
     8) animals;
     9) watercraft including **personal watercraft** such as jet skis or wave runners;
     10) property which is covered under Watercraft and Equipment Coverage;
     11) dock boxes, moorings or cradles; or
     12) fuel.

   iii. What We Pay
     We will pay the **actual cash value** of the personal effect(s). Our liability for any one **occurrence** will not exceed the limit for 'Personal Effects' on the Declarations Page.

   iv. Exclusions
     We will not pay for loss, damage or expense caused by or resulting from:
     1) wear and tear, gradual deterioration, birds, insects, animals, or inherent vice;
     2) mechanical or electrical breakdown, unless caused by lightning;
     3) theft or unexplained disappearance unless there are visible marks of forcible entry or removal; or
     4) diminution in value.

c. Trailer
   i. Coverage
     We will cover sudden accidental direct physical loss or damage to your trailer, but only if used exclusively for transporting the **insured watercraft**.

   ii. What We Pay
     We will pay for the **actual cash value** of the trailer. Our liability for any one **occurrence** will not exceed the limit for the 'Trailer' on the Declarations Page.

   iii. Exclusions
     We will not pay for loss, damage or expense caused by or resulting from:
     1) wear and tear, gradual deterioration, or inherent vice;
     2) mechanical breakdown; or
     3) diminution in value.

d. Emergency Towing and Assistance
   i. Coverage
     We will reimburse the reasonable expenses you incur resulting from the following services to the

**insured watercraft** if help is not available and you must obtain commercial assistance:

1) towing to the nearest place where necessary repairs can be made;
2) delivery of fuel, oil, parts or loaned battery (excluding the cost of the items themselves) or emergency labor, while away from a safe harbor.

ii. What We Pay
The most we will pay for any one **occurrence** is the limit for 'Emergency Towing and Assistance' on the Declarations Page.

2. Loss Conditions
   a. Deductibles
      i. We will not pay for loss, damages or expense for any one **occurrence** until the amount of the loss, damage or expense exceeds the applicable deductible shown on the Declarations Page. We will then pay the amount of loss, damage or expense in excess of the deductible, up to the applicable limit as shown on the Declarations Page.
      ii. In the event that loss occurs as a result of one **occurrence** and the loss would require the application of more than one deductible, only the highest deductible will be applied to the loss.
      iii. If you have a total loss or **constructive total loss** to an **insured watercraft**, then no deductible will be applied to the loss.

      However, if a Windstorm Deductible is shown on the Declarations Page, then the Windstorm Deductible will apply to all partial, total or **constructive total losses** caused by or resulting from any Tropical Depression, Tropical Storm, Hurricane, or Nor'easter.

      Tropical Depressions, Tropical Storms, Hurricanes, or Nor'easters are defined as those designated by the National Weather Service and/or National Hurricane Center.

   b. Salvage and Abandonment
      If we pay the limit as shown on the Declarations Page for 'Watercraft and Equipment' or 'Trailer', we reserve the right to take possession of the remains if we elect. At our request, you will transfer the title of the property to us or to a salvage buyer appointed by us. Any recovery or salvage on a loss will accrue entirely to our benefit until the sum paid by us has been made up.

      We are not obligated to accept any property you abandon, nor are we obligated to pay any storage fees incurred because you abandoned any property to any other person or organization.

   c. Payment of Loss
      We will pay losses within 30 days after the earliest of the following:
      i. we reach agreement with you;
      ii. final judgment is rendered in a court of law;
      iii. an appraisal award is filed with us; or
      iv. a proof of loss is accepted by the company.

   d. Appraisal
      In the event that you or we dispute the amount of your covered loss, either may demand an appraisal in writing. If you or we demand an appraisal, you and we will each appoint and pay a competent and disinterested appraiser. If the two appraisers cannot agree on the amount of the loss, the appraisers or a judge of the local court of record will select an umpire who will decide any differences. An award in writing by any two such persons will determine the amount of your loss. You and we will be bound by that amount.

      You will pay the appraiser you choose and we will pay the appraiser we choose. The expense of the umpire and all other expenses of the appraisal will be shared equally by you and us.

      Appraisal is not available where there is a dispute as to the existence of coverage. Nothing herein will prejudice or in any way impact our right to contest coverage and to bring suit in a court of competent jurisdiction contesting coverage.

e.  Protect and Recover
In the event of a covered loss to the **insured watercraft**, you must protect the **insured watercraft** from further loss and make every effort to recover it. We will pay the reasonable costs you incur under this condition in addition to any other payments we make for loss or damage under 'Watercraft and Equipment' coverage, but not to exceed the limit for 'Watercraft and Equipment' on the Declarations Page.

f.  Loss Payable Conditions
For covered losses to property in which both you and a 'Loss Payee' shown in the Declarations Page have an insurable interest, we will:
i.   adjust losses with you; and
ii.  pay any claim for loss or damage to the 'Loss Payee' and you, as interests appear.

## WATERCRAFT LIABILITY

Coverage
We will cover damages for **bodily injury** or **property damage** for which an **insured** becomes legally liable through ownership, maintenance, or use of the **insured watercraft**, or through a non-owned watercraft being operated by you with the owner's permission.

A non-owned watercraft is any watercraft that is not:
1)  owned wholly or in part by you;
2)  rented or under charter to you;
3)  being used for other than private pleasure;
4)  available for your regular use;
5)  more than 5 feet longer than the **insured watercraft**;
6)  designed for, or capable of, speeds in excess of 55 miles per hour; or
7)  a **personal watercraft**.

A **personal watercraft** is defined as a vessel which uses an inboard motor powering a water jet pump as its primary source of motive power, and which is designed to be operated by a person sitting, standing, or kneeling on the vessel.

If a premium is shown on the Declarations Page for 'Watercraft and Equipment', we will also cover the reasonable expenses incurred to raise, remove or dispose of the wreck of the **insured watercraft** if you are legally obligated to do so. This is not additional insurance, but is included in the limit of Watercraft Liability coverage.

Wreck means the **insured watercraft** has been damaged to such an extent as to render the **insured watercraft** not navigable and we determine the **insured watercraft** to be a total or **constructive total loss**.

What We Pay
We will pay no more than the limit for 'Watercraft Liability' shown on the Declarations Page for all damages or losses resulting from any **occurrence**. This is the most we will pay, regardless of the number of persons covered under this section, claims made, watercraft or premiums shown on the Declarations Page or the number of watercraft involved.

Exclusions
We will not pay for:
1)  liability assumed under any contract or agreement;
2)  **bodily injury** or **property damage** while the **insured watercraft** or non-owned watercraft is being transported on land;
3)  any fine or penalty assessed by any governmental unit;
4)  **bodily injury** or **property damage** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any solid, liquid, gaseous or thermal irritant or **contaminant**, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, including materials to be recycled, reconditioned or reclaimed;
5)  **bodily injury** or **property damage** sustained by any **insured** or **resident**;
6)  damage to property in your care, custody or control;

7) **bodily injury** or **property damage** sustained by any passenger of the **insured watercraft** or non-owned watercraft as a direct or indirect result of any scuba diving activity;

8) **bodily injury** or **property damage** sustained by any person while teak surfing or while engaged in any airborne activity that involves towing a person behind the **insured watercraft** or a non-owned watercraft, such as parasailing, kite-skiing, or ski-jumping;

9) **bodily injury** or any other payment or obligation to any person eligible to receive any benefits required to be provided by you. This includes, but is not limited to, any employment, unemployment, disability, worker's compensation, non-occupational disability, occupational disease law, Jones Act, Federal Longshoremen's and Harbor Worker's Compensation Act, or any state or federal workers' or workmen's compensation law or occupational disease law or migrant or seasonal workers law; or

10) punitive or exemplary damages or associated interest.

Defense

We have the right and duty to defend any suit to which this insurance applies. However, we may investigate and settle any claim or suit at our discretion. Our duty to defend any claim or suit ends when the amount we pay, or tender to the Court of Jurisdiction for any pending litigation on your behalf, for damages resulting from the **occurrence** equals the limit for 'Watercraft Liability' shown on the Declarations Page.

If a suit is brought against you for claims falling within the coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, we will afford a defense to such action; however, we will not have any obligation to pay for any costs, interest, or damages attributable to punitive or exemplary damages.

## OIL POLLUTION LIABILITY

Coverage

We will cover:

1) the sums which you are legally liable to pay as a result of **property damage** arising out of an **oil pollution incident**;

2) the reasonable costs directly associated with the actual clean-up of an **oil pollution incident**;

3) the reasonable costs or expenses legally imposed upon you by those government authorities assisting or monitoring an **oil pollution incident**;

4) administrative charges and civil expenses levied against you by a judiciary body as a result of an **oil pollution incident**;

5) the reasonable costs and expenses to defend you against legal action for **property damage** from an **oil pollution incident**.

**Oil Pollution Incident** means the sudden, accidental and unexpected emission, discharge, release, leakage, escape or spillage of a **contaminant** from an **insured watercraft** in an accident that is specific in place and time within the policy period.

What We Pay

We will pay no more than the limit for 'Oil Pollution Liability' shown on the Declarations Page for all damages or expenses resulting from any **occurrence**. This is the most we will pay, regardless of the number of persons covered under this section, claims made, watercraft or premiums shown on the Declarations Page or the number of watercraft involved.

Exclusions

We will not pay for:

1) liability assumed under any contract or agreement;

2) liability arising while the **insured watercraft** is on land;

3) any fine or penalty assessed by any governmental unit;

4) an **oil pollution incident**, if any **insured** knows, or has reason to know, of the incident and fails to report it as required by law(s);

5) **property damage** sustained by any **insured** or **resident**;

6) **bodily injury**;

7) liability for natural resource damage unless legal action commences within one (1) year of the incident;

8) an **oil pollution incident** unless you provide all reasonable cooperation and assistance with containment and clean-up operations as is required by law or by someone acting under their legal authority; or
9) punitive or exemplary damages or associated interest.

Defense

We have the right and duty to defend any suit to which this insurance applies. However, we may investigate and settle any claim or suit at our discretion. Our duty to defend any claim or suit ends when the amount we pay, or tender to the Court of Jurisdiction for any pending litigation on your behalf, for damages resulting from the **occurrence** equals the limit for 'Oil Pollution Liability' shown on the Declarations Page.

If a suit is brought against you for claims falling within the coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, we will afford a defense to such action; however, we will not have any obligation to pay for any costs, interest, or damages attributable to punitive or exemplary damages.

## MEDICAL PAYMENTS

Coverage

We will cover the reasonable charges for necessary medical, surgical, x-ray, dental, ambulance, hospital and professional nursing services and funeral service expenses incurred within one year from the date of an accident causing **bodily injury** to any person while in, upon, boarding or leaving an **insured watercraft**.

The injured person must submit to an examination by a physician selected by us when and as often as we reasonably require.

What We Pay

We will pay no more per person than the limit for 'Medical Payments' shown on the Declarations Page for medical and funeral expenses resulting from any **occurrence**. This is the most we will pay, regardless of the number of claims made or watercraft or premiums shown on the Declarations Page or the number of watercraft involved.

Each person seeking payment under this coverage must:
1) provide us with written authorization for release to us copies of pertinent medical reports and records; and
2) submit a valid proof of loss within one year of the incurred medical or funeral expense.

Exclusions

Payments under this section will not be made to, or on behalf of, any person:
1) injured while trespassing;
2) for whom liability is assumed by you under contract or agreement;
3) injured while the **insured watercraft** is being transported on land;
4) hired to work for or on behalf of any **insured**; or
5) **bodily injury** or any other payment or obligation to any person eligible to receive any benefits required to be provided by you. This includes, but is not limited to, any employment, unemployment, disability, worker's compensation, non-occupational disability, occupational disease law, Jones Act, Federal Longshoremen's and Harbor Worker's Compensation Act, or any state or federal workers' or workmen's compensation law or occupational disease law or migrant or seasonal workers law.

Admission of Liability

Any payment made under this section is not an admission of liability by you or us.

## UNINSURED WATERCRAFT

Coverage

We will pay all sums you or a **family member** are legally entitled to recover as damages from the owner or operator of an **uninsured watercraft** that is not an **insured watercraft**. The damages must result from **bodily injury** caused by an **occurrence**, sustained by you or a **family member** while on board the **insured watercraft**. The owner's or operator's liability for these damages must result from the ownership, maintenance or use of the **uninsured watercraft** that is not an **insured watercraft**.

The injured person must submit to an examination by a physician selected by us when and as often as we reasonably require.

**Uninsured watercraft** means a waterborne vehicle of any type:
1) To which no **bodily injury** bond or policy applies at the time of the **occurrence**.
2) Which is a watercraft whose operator or owner cannot be identified and which hits:
   a) You or a **family member** while on board the **insured watercraft**; or
   b) an **insured watercraft**.

An **uninsured watercraft** does not include any watercraft or equipment:
1) owned, operated by, or available for the regular use of you or a **resident**; or
2) owned by any governmental unit or agency.

What We Pay

We will pay no more than the limit for 'Uninsured Watercraft' shown on the Declarations Page for all damages or losses resulting from any **occurrence**. This is the most we will pay, regardless of the number of persons covered under this section, claims made, watercraft or premiums shown on the Declarations Page or the number of watercraft involved.

Any amount payable under this coverage will be reduced by all sums paid by or for anyone who is legally responsible, including all sums paid under **MEDICAL PAYMENTS**. Any sums paid under this coverage will reduce any amount you or a **family member** are entitled to recover under **MEDICAL PAYMENTS**.

Each person seeking payment under this coverage must:
1) provide us with written authorization for release to us copies of pertinent medical reports and records; and
2) submit a valid proof of loss within one year of the incurred medical or funeral expense.

Exclusions

We will not pay for:
1) any claim settled without our consent;
2) **bodily injury** to any person on board the **insured watercraft** without permission;
3) the benefit of any insurer or self-insurer, directly or indirectly, under any workers' compensation, disability benefits law or any similar law;
4) damages where there is no evidence of physical contact between the **insured watercraft** and either an unidentified or **uninsured watercraft**; or
5) **bodily injury** to any person arising out of the transportation of an **uninsured watercraft** on land.

This Policy is signed at the Home Office of the company by its president and secretary.

**MARKEL AMERICAN INSURANCE COMPANY**
Glen Allen, Virginia

Richard R. Grinnan
Secretary

F. Michael Crowley
President

**Administrative Office:**
P.O. Box 906
Pewaukee, WI 53072-0906
800-236-2862